# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESCO AIRCRAFT HOLDINGS, INC., et al., | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:25-CV-202 |
| VS. | § § | |
| SSD INVESTMENTS LTD, et al., | § § | |
| Defendants. | § § § | |

**[PROPOSED] MEMORANDUM ORDER REGARDING THE 2024/2026 NOTEHOLDERS' TORTIOUS INTERFERENCE CLAIMS**

On February 19, 2025, the bankruptcy court issued a report and recommendation recommending that this Court dismiss the 2024/2026 Noteholders' tortious interference claims against Platinum, PIMCO, Silver Point, Senator, and Citadel (together, "Defendants"). ECF 36.[1] The 2026 Noteholders filed an objection to the February 19, 2025 report and recommendation, ECF 47; PIMCO and Silver Point (the "First Lien Noteholders"), Platinum, and Citadel each filed responses to the 2026 Noteholders' objection, ECF 70, 71, 72; and the 2026 Noteholders filed a reply, ECF 79. In addition, the First Lien Noteholders filed a limited objection to the February 19, 2025 report and recommendation to assert additional grounds for dismissing the 2024/2026 Noteholders' tortious interference claims, ECF 44; the 2026 Noteholders filed a response to that limited objection, ECF 73; and the First Lien Noteholders filed a reply, in which Platinum joined,

---

[1] Unless otherwise defined, capitalized terms in this order have the same meaning as in the bankruptcy court's February 19, 2025 report and recommendation. *See* ECF 36.

ECF 77, 78. The 2024 Noteholders did not file any objection to the bankruptcy court's report and recommendation or any response to the First Lien Noteholders' objection.

This Court has reviewed the bankruptcy court's report and recommendation and conducted a *de novo* review of both the extensive record developed over the 35-day trial as well as the relevant issues in light of the parties' objections. *See* 28 U.S.C. §157(c)(1). Based on that review, and for the reasons explained in more detail below, the Court OVERRULES the 2026 Noteholders' objection and DISMISSES the 2024/2026 Noteholders' tortious interference claims.[2] Put simply, as equity holders and the holders of hundreds of millions of dollars in Wesco's outstanding notes, Defendants had an overwhelming and undisputed economic interest in attempting to rescue Wesco from its liquidity crisis so that Wesco would be able to repay its debts. Defendants are accordingly entitled to the economic interest defense under New York law, and the record shows no evidence of the kind of malice, illegality or fraudulent conduct that would allow the 2024/2026 Noteholders to overcome that defense.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The 2024/2026 Noteholders' tortious interference claims assert that Defendants improperly induced Wesco to enter into a series of transactions that took place on March 28, 2022 (the "2022 Transactions") despite knowing that Wesco would breach its 2024 and 2026 Indentures by entering into those transactions.[3] As explained in this Court's separate order with respect to the 2024/2026

---

[2] In light of this disposition, the Court DISMISSES as moot the First Lien Noteholders' limited objection to the February 19, 2025 report and recommendation.

[3] The history and mechanics of the 2022 Transactions are discussed in detail in this Court's order dismissing the 2024/2026 Noteholders' breach-of-contract claims, ECF ___, and the Court's findings and conclusions in that order are incorporated here by reference. To the extent that any of the bankruptcy court's findings and conclusions in its February 19, 2025 report and recommendation are contrary to this Court's order dismissing the 2024/2026 Noteholders' breach-of-contract claims, the Court disagrees with those findings and conclusions in the February 19, 2025 report and recommendation.

Noteholders' breach-of-contract claims, Wesco did not breach the 2024 and 2026 Indentures by entering into the 2022 Transactions. ECF ___. That independently bars the 2024/2026 Noteholders' tortious interference claims. *See, e.g.*, *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) ("Tortious interference with contract requires … actual breach of the contract[.]"); *Ocean Trails CLO VII v. MLN TopCo Ltd.*, 233 A.D.3d 614, 617 (N.Y. App. Div. 2024) (affirming dismissal of tortious interference claims because "there was no underlying breach"). But even if the 2024/2026 Noteholders could show that Wesco breached the 2024 or 2026 Indentures by entering into the 2022 Transactions, and even if the 2024/2026 Noteholders could show that Defendants intentionally and improperly procured any such breach, the economic interest defense precludes the 2024/2026 Noteholders' tortious interference claims. ECF 36 at 12-17.

    1. Under New York law, the economic interest defense provides a complete defense to tortious interference with contract. *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007). Under that defense, a defendant cannot be held liable for tortious interference if it acted "to protect its own legal or financial stake in the breaching party's business." *Id.* at 383. That defense "has been applied, for example, where defendants were significant stockholders in the breaching party's business," or "where [the] defendant was the breaching party's creditor." *Id.* at 383-84; *see, e.g.*, *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgm't LLC*, 2019 WL 4744220, at *9 (S.D.N.Y. Aug. 26, 2019) (creditor who "ha[d] an economic interest" in the dispute "is entitled to the economic interest defense"). The defense does not require a defendant to show that it was "acting in the economic interest of the breaching party"; instead, the defendant need only show it acted "to protect its own economic interest in that breaching party." *Don King Prods., Inc. v. Smith*, 47 F.App'x 12, 15 (2d Cir. 2002) (citing *Felsen v. Sol Café Mfg. Corp.*, 249

N.E.2d 459 (N.Y. 1969)). Where a defendant acted to protect its economic interest in the breaching party, overcoming the economic interest defense requires the plaintiff to show "either malice on the one hand, or fraudulent or illegal means on the other." *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996).

Even if the 2024/2026 Noteholders could establish the elements of a tortious interference claim, Defendants are protected from liability under the economic interest defense. As the evidence at trial showed (and the 2024/2026 Noteholders do not dispute), Defendants had an overwhelming economic interest in Wesco, through either their equity holdings or the repayment of their notes, which faced serious risk given Wesco's liquidity crisis. *See* ECF 36 at 15. Absent the emergency $250 million in rescue financing that the 2022 Transactions provided, "the financial outlook of the company would have been severely threatened and a bankruptcy filing would have been certain," posing a major risk to Defendants' interest in Wesco. ECF 36 at 15-16; *see, e.g.*, Adv.Dkt.955 at 52 (explaining that a bankruptcy filing would have damaged PIMCO's investment in Wesco); Adv.Dkt.858 at 115 (same for Silver Point). Conversely, the 2022 Transactions were designed to provide Wesco its "needed liquidity runway" and to "stave off a future bankruptcy filing," protecting Defendants' substantial economic interest in Wesco's ability to repay its outstanding notes. ECF 36 at 16. The record also demonstrates that the 2022 Transactions were superior to the only other proposal that Wesco had received (from the 2024/2026 Noteholders themselves) and that they provided Wesco its needed liquidity on favorable terms. *See id.* In short, it is clear from the record that in proposing the 2022 Transactions, Defendants "acted to protect [their] own legal or financial stake in [Wesco's] business." *White Plains*, 867 N.E.2d at 383; *see* ECF 36 at 12. The economic interest defense therefore "precludes the 2026 Noteholders' claim for tortious interference with contract." ECF 36 at 17.

2. Multiple decisions considering similar claims in similar non-pro rata liability management contexts reinforce that conclusion. In *Robertshaw*, for example, the court considered "an uptier transaction where the plaintiffs sued the company's equity sponsor (who was also a transaction participant)" for tortious interference with contract under New York law. ECF 36 at 14 (citing *In re Robertshaw US Holding Corp.*, 662 B.R. 146 (Bankr. S.D. Tex. 2024)). The court rejected the plaintiffs' tortious interference claim, explaining that the equity sponsor "had a right under New York law to protect its economic interest" by seeking to prevent "a value-destructive bankruptcy filing" through the challenged transaction. 662 B.R. at 166. So too here: Defendants cannot be held liable for tortious interference where they "acted to protect [their] own legal or financial stake in the breaching party's business" by attempting to keep the breaching party out of bankruptcy. *Id.* at 165-66. The fact that those efforts were unsuccessful, and the breaching party "ended up filing bankruptcy" anyway, "does not change the answer." *Id.* at 166.

*Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent Corp.* ("*TriMark*"), 2021 WL 3671541 (N.Y. Sup. Ct. Aug. 16, 2021), illustrates the same principles. That case likewise rejected tortious interference claims against equity sponsors arising from an uptier transaction, explaining that because the defendants "acted to protect the financial value of their investment" in the company by obtaining $120 million in financing to relieve the "tremendous strains" the company faced, "the economic interest defense barred the tortious interference claim." ECF 36 at 13-14 (citing *TriMark*, 2021 WL 3671541, at *11-12). The economic interest defense bars the 2024/2026 Noteholders' tortious interference claims here for the same reason. Indeed, not only are all Defendants entitled to invoke the economic interest defense based on their roles as Wesco's creditors, but Platinum is also separately entitled to invoke the defense because it was Wesco's equity sponsor—a role that courts have consistently held entitles a defendant to raise the economic

interest defense in litigation prompted by similar transactions. *See Robertshaw*, 662 B.R. at 165-66; *TriMark*, 2021 WL 3671541, at *11-12; *ICG Glob. Loan Fund 1 DAC v. Boardriders, Inc.*, 2022 WL 10085886, at *9-10 (N.Y. Sup. Ct. Oct. 17, 2022); *Ocean Trails*, 233 A.D.3d at 617.

    3. The 2026 Noteholders' contrary arguments are unpersuasive. For instance, the 2026 Noteholders claim that New York has "adopted a multi-factor test for the economic interest defense" drawn from the Second Restatement. ECF 47 at 14 (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 447-48 (N.Y. 1980)). That is incorrect. Instead, as the New York Court of Appeals has made clear, the economic interest defense is a single-factor inquiry that simply asks whether the defendant "acted to protect its own legal or financial stake in the breaching party's business." *White Plains*, 867 N.E.2d at 383. The multi-factor test that the 2026 Noteholders cite goes not to the economic interest defense, but rather to whether a defendant has "improperly" interfered with the contract, which is an element of the plaintiff's prima facie tortious interference claim. *Guard-Life*, 406 N.E.2d at 189-90. That is why neither of the cases that the 2026 Noteholders cite for their test even mentions the phrase "economic interest." *See id.*; *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir. 1992).

    The 2026 Noteholders also suggest that the economic interest defense does not apply at all to interference with an existing contract. ECF 47 at 15. But the New York Court of Appeals has squarely held that "a defendant may raise the economic interest defense" in "a contract interference case," refuting the 2026 Noteholders' argument. *White Plains*, 867 N.E.2d at 383; *see also, e.g.*, *Ocean Trails*, 233 A.D.3d at 617. Alternatively, the 2026 Noteholders assert that a defendant may not raise the economic interest defense if it was acting to protect its own direct interests, rather than its interests in the breaching party. But as the record clearly demonstrates, and the bankruptcy court found, Defendants were indeed acting "to protect their economic interests in Wesco" in

proposing the 2022 Transactions. ECF 36 at 15. Because Defendants acted "to protect [Wesco's] business and thereby preserve the value of [their] interests therein," the economic interest defense applies. *Hudson Bay Master Fund Ltd. v. Patriot Nat'l Inc.*, 2019 WL 1649983, at *16 (S.D.N.Y. Mar. 28, 2019).

The 2026 Noteholders assert that New York courts have applied the economic interest defense to creditors only in "markedly different circumstances" where the defendant was exercising "bona fide contractual rights" or had "an equal or superior right" to the property at issue. ECF 47 at 16. But New York law does not impose those purported categorical limitations on the economic interest defense. *See Ocean Trails*, 233 A.D.3d at 617 (affirming that a creditor who "sought to protect its interest as a lender" and wanted "to secure early repayment of its loan" was entitled to the economic interest defense, even though the creditor had no prior contractual right to engage in the challenged transaction); *Foster*, 665 N.E.2d at 157 (lenders who directed a company to terminate plaintiffs in bad faith could still invoke the economic interest defense). Indeed, nothing in New York law (or common sense) supports holding that creditors must show a specific contractual right to engage in the challenged transaction in order to invoke the economic interest defense.

4. Finally, the 2026 Noteholders assert that they can overcome Defendants' economic interest defense because Defendants acted with malice or used fraudulent or illegal means. ECF 47 at 18. As the bankruptcy court explained, however, there is "no evidence in the record that [Defendants] acted for anything other than economic gain" and "no evidence in the record that [they] engaged in illegal or fraudulent conduct." ECF 36 at 16-17. This Court has conducted a *de novo* review of the record and agrees with the bankruptcy court: There is no evidence of malice or of fraudulent or illegal means here.

The 2026 Noteholders assert that in order to establish malice, a plaintiff need only show "intentional interference without justification" with the plaintiff's contractual rights. ECF 47 at 19 (emphasis omitted) (quoting Restatement (Second) of Torts §766 cmt.s (1979)). That argument fails both as a legal matter and as a factual matter. As a legal matter, the 2026 Noteholders again conflate the elements of a prima facie tortious interference claim with the requirements of the economic interest defense. Under New York law, the "malice" necessary to overcome the economic interest defense requires showing that the defendant acted "only with an intent to cause harm to the particular plaintiff"—a showing the 2026 Noteholders cannot make, given that they concede Defendants acted at least in part for economic gain. *U.S. Bank*, 2019 WL 4744220, at *10; *see* ECF 36 at 16-17; *Ruha v. Guior*, 277 A.D.2d 116, 116 (N.Y. App. Div. 2000); *TriMark*, 2021 WL 3671541, at *11; *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F.Supp. 501, 506 (S.D.N.Y. 1992). And as a factual matter, the Court finds that Defendants did not engage in any intentional or improper interference with the 2026 Noteholders' rights here; on the contrary, it is clear from the record that Defendants (correctly) believed that the 2022 Transactions complied with Wesco's obligations under its indentures, and did not intend to cause any breach. *See* Adv.Dkt.604-19 at 7; Adv.Dkt.630 at 143; Adv.Dkt.710-56; Adv.Dkt.827 at 89-90; Adv.Dkt.858 at 13-16, 160, 188-89; Adv.Dkt.955 at 14-16; Adv.Dkt.1013 at 13-14, 51-52; Adv.Dkt.1150-11.

The 2026 Noteholders also contend that the record shows malice because (they say) PIMCO and Silver Point exerted "extreme economic pressure" on Wesco to "coerce" it to enter into the 2022 Transactions. ECF 47 at 19. But even extreme economic pressure in support of economic interest is not malice—and in any event, the record squarely refutes the 2026 Noteholders' characterization, showing that Wesco and its creditors negotiated at arm's length for months over the terms of the 2022 Transactions and that Wesco's board and its advisors reasonably

believed the resulting deal to be in the company's best interest and superior to the only other available proposal. ECF 36 at 5, 7-9, 16.  The only extreme economic pressure that Wesco faced in negotiating the 2022 Transactions was its own urgent need to resolve its liquidity crisis. Defendants' efforts to preserve their own economic interests in Wesco by resolving that crisis through the 2022 Transactions do not constitute malice.  The economic interest defense therefore requires dismissing the 2024/2026 Noteholders' tortious interference claims.

## CONCLUSION

For the reasons explained above, the Court OVERRULES the 2026 Noteholders' objection and DISMISSES the 2024/2026 Noteholders' tortious interference claims.

SO ORDERED _____, at McAllen, Texas.

_____
Randy Crane
Chief United States District Judge